**In the Matter of the Worker's Compensation Claim of:**

**David WILKINSON, Appellant (Claimant/Petitioner),**

v.

**STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

**In the Matter of the Worker's Compensation Claim of: David Wilkinson, Appellant (Claimant/Petitioner),**

v.

**State of Wyoming ex rel. Wyoming Workers' Compensation Division, Appellee (Respondent).**

Nos. 98–251, 99–44.

Supreme Court of Wyoming.

Dec. 7, 1999.

Rehearing Denied Jan. 5, 2000.

Representing Appellant: Keith R. Nachbar, Casper, Wyoming.

Representing Appellant: Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant David Wilkinson appeals from the Natrona County district court's order affirming the hearing examiner's dismissal with prejudice of his application for extended permanent total disability benefits and from the Laramie County district court's order dismissing his petition for review.

We affirm the district courts' decisions.

## ISSUES

Wilkinson presents two issues for our review:

1. Before its repeal in 1986, § 27–12–405(d) provided in pertinent part:

1. Is the Worker's Compensation Division required to comply with a final order of the Medical Commission awarding extended benefits to the Claimant?

2. Was the hearing examiner's dismissal of Wilkinson's alternate application *with prejudice* an abuse of discretion or otherwise not in accordance with law?

## FACTS

It is necessary for us to recite, in some detail, the unusual and complicated procedural history of the cases before us in order to explain our decision. On December 30, 1983, Wilkinson was severely injured in a work-related accident. In 1988, the Wyoming Workers' Compensation Division (the division) determined that Wilkinson was permanently totally disabled. Wilkinson was awarded permanent total disability benefits, and the division finished paying those benefits in April 1992. Wilkinson subsequently applied for and was granted extended permanent total disability benefits through August 1993.

In 1996, Wilkinson again applied for extended permanent total disability benefits. The division denied his application, and Wilkinson objected. The matter was referred to the Medical Commission for a contested case hearing. The commission determined that the law which was in effect when Wilkinson suffered his initial injury in 1983 applied to his application. It ruled that Wilkinson remained permanently totally disabled and that he was entitled to extended benefits. The division paid one year's worth of extended benefits to Wilkinson.

On July 15, 1997, Wilkinson applied for additional extended permanent total disability benefits. The division denied his application, and the matter was referred to the Office of Administrative Hearings for a contested case hearing. The division sought a ruling on what law applied to Wilkinson's application. Wilkinson moved for a summary judgment, maintaining that the Medical Commission's order, which relied upon Wyo. Stat. Ann. § 27–12–405(d) (Michie 1983) (repealed 1986),[1] required the division to contin-

(d) Upon the expiration of the period of time in which the amount awarded to the employee

ue to pay him extended permanent total disability benefits. He claimed, therefore, that the hearing examiner should not reconsider issues which had been decided by the Medical Commission and that she should apply the Medical Commission's decision to his July 15, 1997, application.

The hearing examiner held a hearing on November 3, 1997, to consider the parties' motions. She denied Wilkinson's motion for a summary judgment and ruled that the law in effect in 1988, when it was determined that Wilkinson was permanently totally disabled, was the law that should be applied to his application for extended benefits. Wilkinson moved for a continuance of the contested case hearing which was scheduled for November 6, 1997. The hearing examiner denied Wilkinson's motion.

On November 5, 1997, Wilkinson withdrew his application for benefits and moved for a dismissal of the pending action without prejudice. The division filed a traverse to Wilkinson's motion for a dismissal without prejudice. The hearing examiner heard the parties' arguments on Wilkinson's motion on November 6, 1997. She denied his motion to dismiss without prejudice and gave him the choice of proceeding with the contested case hearing on his application or having a dismissal with prejudice entered against him. Wilkinson refused to proceed and did not offer any evidence. Consequently, the hearing examiner ruled that Wilkinson had not satisfied his burden of proof and dismissed the case with prejudice.

Wilkinson filed a petition for review of the hearing examiner's decision in the Natrona County district court (Case No. 98–251). The district court concluded that the hearing

examiner's decision was in accordance with law and affirmed. Wilkinson subsequently appealed from the district court's decision to the Wyoming Supreme Court.

Wilkinson also filed a petition for review in the Laramie County district court (Case No. 99–44), seeking review of the division's refusal to abide by the Medical Commission's order. The state filed an objection to the petition for review, arguing that the petition was untimely and was barred by the doctrine of collateral estoppel. The district court dismissed Wilkinson's petition for review on the ground that the issue he raised in his petition was barred by the doctrine of collateral estoppel. Wilkinson appealed to the Wyoming Supreme Court, and this Court consolidated Case No. 98–251 and Case No. 99–44 for appellate review.

## STANDARD OF REVIEW

■ When this Court reviews an administrative agency's decision, we do not accord special deference to the district court's determination. *Wyoming Department of Employment, Unemployment Insurance Commission v. SF Phosphates, Ltd.,* 976 P.2d 199, 201 (Wyo.1999). Instead, we review the case as if it had come directly to the Wyoming Supreme Court from the agency. *Shaffer v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 960 P.2d 504, 506 (Wyo.1998). Judicial review of administrative decisions is limited to a determination of the matters set out in Wyo. Stat. Ann. § 16–3–114(c) (LEXIS 1999). W.R.A.P. 12.09(a); *Everheart v. S & L Industrial,* 957 P.2d 847, 851 (Wyo.1998).

■ This Court will not disturb an agency's findings of fact unless they are

for permanent total disability would be paid in its entirety at the monthly rates fixed by law, the district court may award additional compensation to the injured employee for any continuing impairment of his earning power resulting from the original injury, subject to the following:
 (i) A claim for compensation must be filed by the employee, or by someone on his behalf, and a hearing held;
 (ii) The employee shall establish that his earning power has been and continues to be impaired by reason of the injury for which compensation was awarded;

. . . .
(v) The additional compensation shall be payable only so long as the employee's earning power is impaired, and his right to receive compensation terminates upon his death;
(vi) The award may be increased within the limit set above or decreased upon proper showing to the court that there has been a substantial change in the employee's earning power, except that no modification of a prior award is effective less than six (6) months after the effective date of the prior award.

clearly contrary to the overwhelming weight of the evidence. *Nelson v. Sheridan Manor*, 939 P.2d 252, 255 (Wyo.1997). We do not, however, grant the same deference to an agency's conclusions of law. *Id.* We affirm an agency's conclusions of law when they are in accordance with law. *Corman v. State ex rel. Wyoming Workers' Compensation Division*, 909 P.2d 966, 970 (Wyo.1996). When an agency has not invoked and properly applied the correct rule of law, we remedy the agency's errors. *Gneiting v. State ex rel. Wyoming Workers' Compensation Division*, 897 P.2d 1306, 1308 (Wyo.1995).

## DISCUSSION

### Case No. 98–251

It is somewhat difficult to discern from Wilkinson's brief what errors he claims the hearing examiner made in Case No. 98–251 because he confuses the issues in that case with the issues in Case No. 99–44. We have, however, distilled his argument concerning Case No. 98–251 down to two primary claims of error: (1) The hearing examiner's dismissal of Wilkinson's case with prejudice was an abuse of discretion or otherwise not in accordance with law; and (2) the hearing examiner erred when she did not apply the Medical Commission's decision, which ruled that Wilkinson was entitled to extended permanent total disability benefits, to his July 15, 1997, application.

### A. Dismissal of Case with Prejudice

This Court has recognized a hearing examiner's authority to dismiss a worker's compensation case. *See, e.g., Bila v. Accurate Telecom*, 964 P.2d 1270 (Wyo.1998); *Walsh v. Holly Sugar Corporation*, 931 P.2d 241 (Wyo.1997). The hearing examiner in this case did not indicate what procedural rule she relied upon in dismissing Wilkinson's action. Nevertheless, the parties seem to agree that W.R.C.P. 41 was applicable to this situation. That rule states in pertinent part:

(a) Voluntary Dismissal; Effect Thereof.

. . . .

(2) By Order of Court. Except as provided in paragraph (1), an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the counterclaim shall remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

(b) Involuntary Dismissal; Effect Thereof.

(1) By Defendant. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

(2) By the Court. Upon its own motion the court may dismiss without prejudice any action not prosecuted or brought to trial with due diligence.

W.R.C.P. 41.

Wilkinson moved, presumably under W.R.C.P. 41(a)(2), for a voluntary dismissal of the action without prejudice. He sought the dismissal because he was not prepared for the contested case hearing and because he had filed a petition for a writ of mandamus with the Natrona County district court to compel the division to comply with the Medical Commission's order.[2] The division objected to Wilkinson's motion to dismiss without prejudice and requested that a dismissal with prejudice be entered against him. The hearing examiner denied Wilkinson's motion to dismiss without prejudice and told

---

**2.** The documents concerning Wilkinson's mandamus action are not included in the record on appeal. The parties represent in their briefs that the action was voluntarily dismissed on June 8, 1998.

him that he must present evidence in support of his application or a dismissal with prejudice would be entered against him. Wilkinson refused to proceed with the contested case hearing, and the hearing examiner dismissed the action with prejudice.

When a W.R.C.P. 41(a)(2) motion to dismiss is denied, the case continues, and the order is not appealable. 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2376 (1971). We will not, therefore, review the hearing examiner's denial of Wilkinson's motion to dismiss without prejudice.

The division's request for a dismissal with prejudice was presumably brought under W.R.C.P. 41(b)(1). A dismissal under that rule generally amounts to an adjudication on the merits. W.R.C.P. 41(b)(1); Wright & Miller, *supra*, at § 2369. There seem to be two underlying bases for the hearing examiner's decision to dismiss Wilkinson's application with prejudice: (1) Wilkinson refused, in contravention of her prior orders, to proceed with his case; and (2) he failed to meet his burden of proof. We agree with the hearing examiner on both fronts.

Wilkinson admitted that part of the reason he requested the motion to dismiss without prejudice was to delay the contested case hearing because he was not prepared for it. The hearing examiner had previously denied Wilkinson's motion for a continuance of the hearing, and we cannot fault her for refusing to allow him to circumvent her earlier ruling. Furthermore, Wilkinson failed to meet his burden to prove that he was entitled to receive extended permanent total disability benefits when he declined to present evidence in support of his application. The hearing examiner correctly dismissed Wilkinson's July 15, 1997, application with prejudice. *See Turnbough v. Campbell County*

*Memorial Hospital,* 499 P.2d 595, 598 (Wyo. 1972) (McIntyre, C.J., concurring).

## B. Finality of the Medical Commission's Decision

We turn now to Wilkinson's claim that the hearing examiner erred by failing to apply the Medical Commission's decision to his July 15, 1997, application for extended permanent total disability benefits. Wilkinson did not include an argument on that issue in the brief he submitted to the district court. We generally do not consider issues which were not presented to the lower tribunal and do not pertain to fundamental matters. *Zielinske v. Johnson County School District No. 1,* 959 P.2d 706, 710 (Wyo.1998). We will not, therefore, consider Wilkinson's argument concerning the preclusive effect of the Medical Commission's decision because he did not present it to the district court.[3]

### Case No. 99–44

Wilkinson claims that the Laramie County district court erred when it dismissed his petition for review in Case No. 99–44. The state argues that the dismissal was appropriate because Wilkinson's claims in that case were barred by the doctrine of collateral estoppel. We agree with the state.

Collateral estoppel, which is also known as issue preclusion, applies to administrative decisions. *University of Wyoming v. Gressley,* 978 P.2d 1146, 1153 (Wyo.1999); *Kahrs v. Board of Trustees for Platte County School District No. 1,* 901 P.2d 404, 406 (Wyo.1995). The collateral estoppel doctrine prohibits relitigation of issues which were actually and necessarily involved in a prior action between the same parties. *Id.* Courts consider four factors in determining whether the collateral estoppel doctrine applies:

---

**3.** Wilkinson asserts in his reply brief that he could not present his argument to the district court because a denial of a motion for a summary judgment is not a final appealable order. It is interesting to note that he did present the issue to this Court. In any event, Wilkinson is correct when he states that a denial of a motion for a summary judgment generally is not appealable. *Wolter v. Equitable Resources Energy Company, Western Region,* 979 P.2d 948, 953 (Wyo.

1999). Nevertheless, when a case has been fully decided and a party desires appellate review of a lower tribunal's determination of law in the context of a denial of a summary judgment motion, the issue must be included as part of the appeal of the entire case. *See LVW v. J (Adoption of MSVW),* 965 P.2d 1158, 1161–62 (Wyo.1998). If this were not true, the lower tribunal's decision would never be subject to appellate review. *See id.*

(1) whether the issue decided in the prior adjudication was **identical** with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Slavens v. Board of County Commissioners for Uinta County,* 854 P.2d 683, 686 (Wyo. 1993).

■ The issue presented to the Laramie County district court, which concerned whether or not the Medical Commission's decision applied to the July 15, 1997, application, was identical to one of the issues determined in the administrative proceeding. Wilkinson was a party to the administrative proceeding, and the hearing examiner issued a ruling on the merits of the issue. Wilkinson was afforded a full and fair opportunity to litigate the issue before the hearing examiner. Although he failed to take advantage of his right to have the hearing examiner's decision reviewed by the Natrona County district court, Wilkinson had the opportunity for full judicial consideration of the issue. A full and fair opportunity to litigate an issue is all that is required for the collateral estoppel doctrine to apply. *CLS v. CLJ,* 693 P.2d 774, 776–77 (Wyo.1985). All the factors of the collateral estoppel doctrine were present in this case, and the Laramie County district court properly dismissed Wilkinson's petition for review. *See Davis v. State,* 910 P.2d 555, 558 (Wyo.1996).

Affirmed.

LEHMAN, Chief Justice, dissenting, with whom GOLDEN, Justice, joins.

Because I believe the majority decision incorrectly declines to review the Division's deliberate refusal to recognize the final order of the Medical Commission, issued after the Division was given a full and fair opportunity to litigate the issues in a contested case hearing, I must respectfully dissent.

### 1. *The Law*

The essence of the underlying dispute between Wilkinson and the Division was which law applied to Wilkinson's eligibility for extended permanent total disability benefits in 1997. After a contested case hearing directly addressing this issue, as it related to his request for benefits in 1996, the Medical Commission ruled that "the law governing Employee/Claimant's claim for extended benefits shall be the law in effect at the time of Employee/Claimant's injury, W.S. § 27–12–405(d)(i) through (vii) (1983)." This provision stated in relevant part:

**§ 27–12–405. Permanent total disability; defined; benefits; additional benefits upon expiration of initial award.**

(a) Permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis or other conditions permanently incapacitating the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training.

. . .

(d) Upon the expiration of the period of time in which the amount awarded to the employee for permanent total disability would be paid in its entirety at the monthly rates fixed by law, the district court may award additional compensation to the injured employee for any continuing impairment of his earning power resulting from the original injury, subject to the following:

(i) A claim for compensation must be filed by the employee, or by someone in his behalf, and a hearing held;

(ii) The employee shall establish that his earning power has been and continues to be impaired by reason of the injury for which compensation was awarded;

(iii) In determining whether there has been an impairment in the employee's earning power, the district court shall consider the amount which the employee is currently capable of earning in comparison with his earnings at the time of his injury;

. . .

(v) The additional compensation shall be payable only so long as the employee's earning power is impaired, and his right to receive compensation terminates upon his death;

(vi) The award may be increased within the limit set above or decreased upon proper showing to the court that there has been a substantial change in the employee's earning power, except that no modification of a prior award is effective less than six (6) months after the effective date of the ·prior award. . . .

(vii) The award shall be decreased to an amount necessary to qualify the employee for maximum benefits for any other state or federal government pension plans of any type to which the employee is otherwise eligible.

Wyo. Stat. Ann. § 27–12–405 (Michie June 1983 Rpl.). Approximately six months after the Medical Commission issued its ruling, the hearing examiner ruled that Wilkinson's extended permanent total disability benefits for 1997 were governed by the amended law in effect in 1988, the year the Division first awarded Wilkinson permanent total disability benefits. That law provided:

§ 27–14–403. **Awards generally; method of payment.**

(g) Following payment in full of any award . . . to an employee for permanent total disability . . ., an additional award may be granted:

(i) In the case of an employee subject to the following requirements and limitations which shall be met:

(A) A claim for compensation is filed by the employee or someone on his behalf and a hearing is held following notice to the employer and division;

(B) The employee establishes a reasonable effort on his behalf has been made to return to part time or full time employment including retraining and educational programs;

(C) The hearing examiner in determining entitlement under this paragraph shall consider income of the employee from all sources including active or passive income, household income and any monthly amount from any other governmental agency;

. . .

(F) The hearing examiner may decrease an award to qualify an employee eligible for maximum benefits under any other state or federal pension plan;

(G) Any award granted under this subsection shall not exceed twelve (12) months but may be renewed following additional hearings unless the hearing examiner, the director and the employer mutually determine a hearing is not necessary.

Wyo. Stat. Ann. § 27–14–403 (Michie June 1987 Rpl.). The import of which law is applied directly affects Wilkinson's burden of proof to establish his eligibility for benefits. As the Hearing Examiner recognized, "there are certain requirements under 403 [Michie June 1987 Rpl.] as opposed to 405 [Michie June 1983 Rpl.], and the burden of proof is heightened on the Claimant under that statute in 403 as opposed to 405." Because the hearing examiner's dismissal of Wilkinson's claim was based solely on his failure to meet the burden of proof under the law in effect in 1988, the main issue on appeal is whether collateral estoppel precluded the hearing examiner from applying that law.

## 2. *The Facts*

In 1983, Wilkinson fell from a truck while at work and suffered three compression fractures of his vertebrae, a dislocated collar bone, and a smashed right leg. He received permanent total disability benefits in 1988, which expired in 1992. In 1993, Wilkinson requested extended benefits. At a contested case hearing before a hearing examiner, the parties stipulated that the 1988 law applied. The hearing examiner denied the benefits requested in 1993.

The current dispute began when Wilkinson again filed for extended permanent total disability benefits on January 28, 1996. Upon the Division's denial of that claim, and Wilkinson's objections to the Division's determinations, the case was referred for a full hearing to the Medical Commission to be

held on April 10, 1997. In the meantime, in December 1996, Wilkinson submitted another request for extended benefits for 1997 through January 1998.

On March 20, 1997, the Division filed a Motion for Instruction on Applicable Law, arguing that the parties' stipulation applying the 1988 law at the 1993 hearing was binding on the current claim. A hearing was held on the Division's motion on April 1, 1997. Relying on *L.U. Sheep Co. v. Board of County Comm'rs of County of Hot Springs,* 790 P.2d 663, 674 (Wyo.1990), the Medical Commission made an oral determination that it was not bound by the parties' stipulation of law in an earlier proceeding, and concluded that the law governing Wilkinson's claim for extended benefits was the law in effect at the time of his injury, Wyo. Stat. Ann. § 27–12–405(d)(i) through (vii) (Michie June 1983 Rpl). The contested case hearing on the merits of Wilkinson's claim was held on April 10, 1997, at which both parties presented numerous witnesses and exhibits. On May 14, 1997, the Medical Commission issued a written order regarding its determination of applicable law, and holding that Wilkinson had proven "his earning power has been and continues to be impaired by reason of the injury for which compensation was awarded" and that his current earning capacity was zero. The Division did not appeal the Medical Commission's decision.

The Division paid Wilkinson extended benefits from January 28, 1996 through January 27, 1997, but refused to make further payment on the basis that Wyo. Stat. § 27–14–403(g)(i)(G) restricted the Medical Commission's award to twelve months of benefits. Although Wilkinson believed he had filed a claim for 1997 benefits in December 1996, before the Medical Commission issued its decision, the Division informed Wilkinson that it had no record of that claim. Relying on the Division's representation, Wilkinson filed another claim for benefits for the period of January 27, 1997 through January 26, 1998. The Division received that claim on July 15, 1997.

The next day, July 16, 1997, the Division issued a Final Determination denying benefits for 1997, which stated in relevant part:

> The Division determines the claimant is not entitled to permanent total extended benefits pursuant to Wyoming Statute 27–14–403(g)(C). The Division determines claimant's income ... active or passive income, household income and any monthly income from any other governmental agency ... to be adequate and meets the need for subsistence. Your income from social security of $12,000.00 exceeds the U S Department of Labor level of $10,860.00. Your adjusted annual award from the Division is $0.00.

This language reiterates the 1988 limitations on benefits, but there is no reference to the 1983 law found by the Medical Commission to be controlling in Wilkinson's case only two months earlier.

Wilkinson then filed an objection, maintaining that he continued to be permanently disabled, the claim was previously determined in his favor by the Medical Commission, and the 1983 statute does not contemplate consideration of the Department of Labor subsistence levels. The matter was referred to the Office of Administrative Hearings, which set a hearing date for November 6, 1997. This was the beginning of case no. 98–251.

On October 9, 1997, the Division filed a Motion for Instruction on Applicable Law, arguing precisely the same issues which had been argued to the Medical Commission in the earlier proceeding. This motion did not refer to its argument to the Medical Commission or the Medical Commission's recent holding on the matter. As Exhibit B to its motion, the Division included the affidavit of Marcia Price, the claims specialist responsible for Wilkinson's file, which stated that Wilkinson had filed for extended benefits for the year 1997 on or about December 1, 1996.

On October 20, 1997, Division filed its disclosure statement in which it phrased its contentions as follows:

> The Respondent contends that the Employee–Claimant's entitlement to extended permanent total disability benefits should be considered under the law in effect in 1988. Under that law, the Employee–Claimant would be subject to the provi-

sions of Wyo. Stat. § 27–14–403(g) (1988). Respondent would request that the Office of Administrative Hearings hold the Employee–Claimant to his strict burden of proof under this statute.

In the event the Office of Administrative Hearings should determine that the applicable law is Wyo. Stat. § 27–12–405(d), the law in effect at the date of the accident, then the Respondent would contend that any extended permanent total disability benefits payable to the Employee–Claimant should be reduced to an amount necessary to qualify him for maximum state or federal governmental benefits.

Two days later, on October 22, Wilkinson filed a Motion for Summary Judgment claiming entitlement to the 1997 benefits as a matter of law. He argued the Medical Commission's determination collaterally estopped the Division's arguments on the applicable law, and the Medical Commission's Order required payment "for any and all claims by David Wilkinson for extended benefits." As exhibits to his brief, Wilkinson submitted the copy of the statute in effect in 1983, the Marcia Price affidavit used in the Division's motion, copies of past claims and correspondence from doctors, the deposition testimony of Dr. Law, and Wilkinson's affidavit stating that his circumstances had not changed since the hearing before the Medical Commission. The Division did not submit a written response to the Motion for Summary Judgment.

The Division's Motion for Instruction on Applicable Law, and Wilkinson's Motion for Summary Judgment were heard on November 3, 1997. The Division's motion was heard first. The Division argued that the 1988 law applied, while Wilkinson maintained the Division's position was precluded by collateral estoppel. The hearing transcript reveals that there was significant confusion as to whether the December application for 1997 benefits was pending before the Medical Commission at the time it made its decision. Nonetheless, the hearing examiner determined that the claim before her was filed in

July 1997 and, therefore, was a new claim. On that basis, she determined that the Medical Commission's Order did not preclude her finding that the 1988 law applied to this claim.

Turning to the motion for summary judgment, the Division argued that the motion was insufficient given the hearing examiner's decision on the applicable law. The Division noted that under the 1988 provision, Wilkinson "has a burden of proof to show retraining, reeducation, household income, etc." Because none of these issues were addressed in Wilkinson's motion, the hearing examiner denied the motion for summary judgment.

At this juncture, Wilkinson's counsel requested a continuance of the hearing scheduled in three days. Counsel for Wilkinson explained:

> We are not going to be able to go to hearing on Thursday. This has totally turned upside down the case, as far as I'm concerned. There is also a Petition for Writ of Mandamus,[1] and we intend to pursue that in the District Court. So I'll have to move for a continuance because it appears that what we are going to do is relitigate what has been litigated in May that took a year and a half to get it to hearing.

The Division refused to agree with a continuance, stating:

> What the Employee/Claimant has to do at the hearing on Thursday *is establish reasonable effort has been made to return to part-time or full-time employment, including retraining and educational programs*, and also provide sources of active or passive income, household income, any other amount from a governmental entity. We are set to go and we will ask that you hold the Employee/Claimant to a strict burden of proof.

(Emphasis added.) However, the Division's counsel then stated that, *"we are not contesting the issue of permanent total disability."*

---

1. On October 31, 1997, Wilkinson filed a petition for Writ of Mandamus in the district court seeking to compel the Division's payment of 1997 extended benefits pursuant to the order of the Medical Commission.

Wilkinson's counsel attempted to clarify the issues which would be heard at the imminent proceeding:

*I guess what I need to find out is the issue of retraining is something that was certainly exhausted in the Medical Commission hearing. So if the Division will stipulate to everything but the issue of other sources of income, then we could proceed on Thursday.* If we're going to go back and re-litigate all the issues that were litigated before the Medical Commission, we're talking about several months of preparation. We did depositions of—I think I spelled it out in my memo. We did a vocational evaluation, they did a vocational evaluation; we did a deposition of the treating physician and three other doctors; we had five other witnesses. If those things are in issue again here within six months of the last decision, we are going to need some time to put everything together.

. . .

. . . [I]f the Office is ruling that we have a different burden of proof from what the Medical Commission ruled and is opening up the issue of Mr. Wilkinson's continued entitlement to extended benefits on the issue that [Division's counsel] raised, which is the issue of whether he has undergone retraining efforts, quite frankly, the Medical Commission's decision precludes any dispute over those things because the Medical Commission—and that was exactly their argument before, was that he hadn't undergone retraining. We had vocational people testify, and the Medical Commission ruled that he has done what he could do.

*Now, if the Division is going to stipulate to the findings of fact and conclusions of law that were entered into by the Medical Commission regarding his ability to undergo retraining, and so on, then maybe the financial issues are all we have to deal with.* If that's not the case, then yes, we have to change our witnesses and we are going to have to go through the same hearing that we did before, so we are going to add probably eight

other witnesses and have to do depositions and everything we did before.

(Emphasis added.) Pressing its advantage, the Division refused to stipulate to the findings of the Medical Commission. After the hearing examiner noted Wilkinson's objection, she ruled that the hearing would proceed.

The next day, Wilkinson filed a motion to withdraw his application and to dismiss the pending action without prejudice. On November 5, the Division filed a Traverse to the Motion and asked that if the matter is dismissed, it be dismissed with prejudice. Arguments on this motion were heard as a preliminary matter on November 6, 1997. At that time, counsel for Wilkinson explained that there were two reasons for the motion to dismiss.

The first was that counsel for the parties had discussed, prior to the November 3 hearing, that the only probable issue at the November 6 hearing would be whether other sources of income were to be considered under the 1983 statute and, if so, what they were. Both counsel had agreed that the number of witnesses would be limited, and Wilkinson *would not* be required to show whether or not he had earning ability, whether he continued to be disabled, or whether he had made efforts at retraining or employment. Given the understanding of counsel, and the ruling on Monday morning, there was insufficient time to prepare for the hearing. Wilkinson's counsel argued that proceeding to hearing on the date set would essentially deny Wilkinson a fair opportunity to be heard. Secondly, Wilkinson maintained that the July 1997 application was unnecessary under the law in effect in 1983 and, therefore, if the Medical Commission's decision was applied on Wilkinson's petition for writ of mandamus, Wilkinson's present claim for 1997 benefits would be moot.

Although the Division's counsel recalled the conversation referred to by Wilkinson's counsel, he explained, "obviously, I was looking at the case from a different viewpoint." He continued:

My view is that what we were talking about is extended benefits. If the 1983 was applicable, we would be arguing about

whether or not the social security that he received should be considered. And if so, to what extent. If the 1988 law was applicable, we would have been arguing that he had not undertaken sufficient retraining, re-education. We want this office to consider all of his active and passive income. We are ready to proceed today. We have got our evidence and we are ready to hold [Wilkinson] to his strict burden of proof today.

At this point, Wilkinson's counsel attempted once more to convince the hearing examiner that the issues raised by the Division were decided before the Medical Commission. Pointing to the Medical Commission's order, counsel stated:

Look at finding number 10 on page 5. Look at finding number 11 on page 6. Look at finding number 13 on page 6 of the Medical Commission's order. Look at findings 16, 17, 18. All of those findings have to do with whether or not—in addition finding numbers 21 and 20. All of those findings have to do with Mr. Wilkinson's efforts at retraining, re-education and re-employment. Those are precisely the issues that were fought so diligently by both sides before the Medical Commission.

The hearing examiner then asked if Wilkinson had any plans to refile the case. Counsel responded that he did not expect that would be necessary, since he believed that the matter pending before the district court would resolve the issues. In response, the hearing examiner concluded:

In looking at the reasons that have been enumerated by the attorney on behalf of the claimant today, . . .—and if the contention by the claimant is that the time period that's before the office of a hearing is covered by the Medical Commission order and that this matter would be—to be decided for the second time, clearly there would be no problem with this matter being dismissed with prejudice because that matter would be disposed of by that prior order.

On this basis, the hearing examiner stated she would either grant a dismissal with prejudice or proceed to hearing. When counsel for Wilkinson stated he could not proceed

further, the case was dismissed with prejudice due to the hearing examiner's belief that the dismissal would not interfere with the matter pending before the district court.

Wilkinson appealed the dismissal of his claim to the district court in Natrona County. While this appeal was pending, he withdrew his petition for writ of mandamus. On June 18, 1998, the district court issued a decision letter stating in relevant part:

The Court finds that the decision of the administrative judge was in accordance with the law and should otherwise be affirmed.

The case was dismissed with prejudice because the Petitioner's case did not meet its burden of proof. Given the failure of evidence to support the claim, dismissal with prejudice is appropriate.

The court's order was issued on July 13, 1998. This appeal followed and was docketed as case no. 98–251.

On July 22, 1998, Wilkinson filed a petition for review in the district court of Laramie County seeking to enforce the Medical Commission's order. The district court dismissed the petition on November 12, 1998, finding his claim that the 1983 law applied was barred by the doctrine of collateral estoppel. Wilkinson appealed this decision, and the case was docketed as case no. 99–44. The two cases were consolidated for appellate review before this court.

### 3. Analysis

The majority affirms the hearing examiner's dismissal of the case with prejudice and declines to review the real issue in this case—the finality and effect of the Medical Commission's decision. Applying W.R.C.P. 41(b)(1), the majority states that "there seem to be two underlying bases for the hearing examiner's decision to dismiss Wilkinson's application with prejudice: (1) Wilkinson refused, in contravention of her prior orders, to proceed with his case; and (2) he failed to meet his burden of proof." Maj. op. at 1233. While the parties argued the propriety of the hearing examiner's decision under Rule 41, the order did not state that the hearing examiner was dismissing the case with preju-

dice because of a failure to comply with an earlier order in the proceedings. The *only* reason given by the hearing examiner for its decision was Wilkinson's failure to meet his burden of proof. Thus, the correct rule to be applied to the hearing examiner's decision, as a matter of law, is W.R.C.P. 52(c)[2], not Rule 41(b).[3]

Because a ruling under 52(c) is an adjudication on the merits of the case, it is not a discretionary finding. The standard of review applied in a case dismissed with prejudice under Rule 52(c) is essentially a directed verdict analysis, taking the plaintiff's evidence as true and affording it all favorable and reasonable inferences. *Mountain View/Evergreen Improvement & Serv. Dist. v. Casper Concrete Co.*, 912 P.2d 529, 531 (Wyo.1996); *Kaiser v. Farnsworth Drilling Co., Inc.*, 851 P.2d 1292, 1295 (Wyo.1993). However, when the ruling is based on conclusions of law argued before the tribunal, the issues are "freely reviewable." 9A Wright & Miller, *Federal Practice and Procedure: Civil 2d*, § 2588 at 601 (1995).[4]

While it is true that Wilkinson did not identify collateral estoppel as a separate issue in his brief to the district court, it is equally apparent that he expressly and clearly laid forth his position regarding the collat-

eral estoppel effect of the Medical Commission's decision. Further, the district court's decision letter affirms the hearing examiner's determinations of law. Thus, I would find that the issue of collateral estoppel was not waived, was considered by the district court, and is appropriately before us on appeal.

We repeatedly have held that the doctrine of collateral estoppel applies to a final determination by an administrative agency. *University of Wyoming ex rel. Kail v. Gressley*, 978 P.2d 1146, 1153 (Wyo.1999); *Slavens v. Board of County Comm'rs for Uinta County*, 854 P.2d 683, 685 (Wyo.1993).

> [A]lthough many cases speak of res judicata in the administrative context, they actually apply collateral estoppel. Collateral estoppel is the appropriate doctrine since collateral estoppel bars relitigation of previously litigated issues.... Res judicata on the other hand bars relitigation of previously litigated claims or causes of action.

*Ottema v. State ex rel. Worker's Compensation Div.*, 968 P.2d 41, 45 (Wyo.1998) (quoting *Tenorio v. State ex rel. Workers' Compensation Div.*, 931 P.2d 234, 238 (Wyo.1997) (citations omitted)). As the majority ironically points out on behalf of the Division, collateral estoppel forecloses relitigation when the issue presented is identical to one

---

**2.** W.R.C.P. 52(c) states, in pertinent part:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim ... that cannot under the controlling law be maintained[.]

**3.** Even were Rule 41 applied to this case, the language of Rule 41 is expressed as permissive rather than mandatory. *Gaudina v. Haberman*, 644 P.2d 159, 169 (Wyo.1982). The discretionary determination as to whether to grant or deny an involuntary dismissal, and under what conditions, "requires a weighing of circumstances and judicial policies." *Id.* at 170. I believe consideration of the circumstances and judicial policies in this case would reveal an abuse of discretion on the part of the hearing examiner. *See* 9 Wright & Miller, *Federal Practice and Procedure: Civil 2d*, § 2369 at 335–40, and § 2376 at 423 (1995) (courts view with disfavor the use of the ultimate sanction of dismissal with prejudice except in extreme cases).

**4.** Relying on *Zielinske v. Johnson County Sch. Dist. No. 1*, 959 P.2d 706 (Wyo.1998), the majori-

ty declines to consider the finality of the Medical Commission's decision (collateral estoppel) because it was not presented in the opening appellate brief to the district court. The majority's reliance on *Zielinske* is misplaced, as that case was certified to us by the district court and, therefore, our refusal to consider the issue raised for the first time in the appellants reply brief in *Zielinske* was based on the failure to raise the issue at the administrative level. That is not the case here.

Our general rule, as correctly stated by the majority in its standard of review, is that we review a decision in worker's compensation cases *as if it came directly from the Division*, according no deference to the district court's findings. If the agency's conclusions of law are correct, the decision will be affirmed. If not, we will correct the agency's decision. *Walsh v. Holly Sugar Corp.*, 931 P.2d 241, 242 (Wyo.1997); *Clark v. State ex rel. Workers' Safety & Compensation Div.*, 968 P.2d 436, 437 (1998). I have found no Wyoming case which holds that issues in a worker's compensation appeal are waived if not directly raised in the initial brief to a district court, even though extensively argued below. However, we need not decide that question here.

determined in a prior proceeding; when the prior proceeding produced a decision on the merits of the issue; when the party against whom issue preclusion is asserted was a party, or in privity with the party, in the prior proceeding; and when the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Kahrs v. Board of Trustees for Platte County Sch. Dist. No. 1*, 901 P.2d 404, 406 (Wyo.1995); *Slavens*, 854 P.2d at 686.

There is no question here that the Division specifically sought a ruling on the same issue which had reached a final determination on its merits in the 1996 proceeding before the Medical Commission. In the hearing before the Medical Commission, the Division argued that Wilkinson was not deemed permanently totally disabled until 1998. However, under our holding in *Rodgers v. State ex rel. Workers' Compensation Div.*, 939 P.2d 246, 249 (Wyo.1997), published before the Medical Commission's determination, "the particular facts of each case must be considered to determine the applicable statute, and . . . the claimant's injury is deemed to have occurred when the treating physician determined that the claimant was totally disabled." This is a determination particularly suited to the Medical Commission, and the determination that the 1983 law applied to Wilkinson's 1996 claim for extended benefits necessarily includes the finding that he was permanently totally disable before the 1987 amendments. The proceeding before the Medical Commission involved the same parties, and the final determination on the merits was rendered only after these parties fully and fairly litigated the issue. The Division was free to appeal that decision to the district court, but it did not do so. Thus, all the requirements for the application of the collateral estoppel doctrine were satisfied in this case.

However, the Division erroneously convinced the hearing examiner that because this was a new claim filed after the hearing before the Medical Commission, and the Medical Commission has no authority to rule on prospective claims, its decision did not apply in any way to the current dispute. Putting aside the issue of whether the claim for 1997 benefits was before the Commission at the time of the hearing, a new claim does not negate the application of collateral estoppel to the same *issues* which were previously litigated and decided.

Under our holdings in *Tenorio* and *Ottema*, an uncontested determination of benefits will not act as a bar to later claims or defenses. *Ottema*, 968 P.2d at 45; *Tenorio*, 931 P.2d at 239. However, in this case, several issues relating to the 1997 benefits were decided by the Medical Commission after a full hearing. First, it cannot be questioned that the law to be applied to extended permanent total disability benefits stemming from Wilkinson's *1983 injury* was an issue before the Medical Commission, the issue was litigated on its merits, and decided. Therefore, unless the Division contested the current claim because it was not causally related to the 1983 injury, any issues as to the applicable law were barred by the doctrine of collateral estoppel. The Division conceded that Wilkinson remained totally permanently disabled from his 1983 injury. Thus, the hearing examiner erred in failing to apply the law in effect in 1983.

Were we to approve the Division's position that each new claim is totally untouched by previous rulings, we would be holding that a claimant will never have a final determination on any aspect of his claim extending beyond one year. The onerous burden on the claimant and the taxpayers of such a decision is clear. Each year, the claimant, represented by an attorney often paid by the taxpayers, would be required *to litigate* each and every element of his claim, even in the absence of an allegation that something had changed. At the same time, the costs of the Division's legal representation would also be borne by the citizens of Wyoming. Thus, every year the parties would reargue the same issues, presenting the same witnesses and the same evidence, all at the expense of the Wyoming taxpayer. According to the position taken by the Division, Wilkinson could apply for permanent total disability benefits for 1998, and the law to be applied would again be relitigated. This certainly cannot be the intent of the legislature.

Finding that the 1983 law applies to Wilkinson's 1997 benefits pursuant to the doctrine of collateral estoppel, we turn to the procedural requirements and Wilkinson's

burden of proof under that law. These issues have not been determined by this court in the past, and therefore we must consider the statutory provisions according to our well established rules of construction. *Parker Land & Cattle Co. v. Game & Fish Comm'n,* 845 P.2d 1040, 1042–45 (Wyo.1993).

The Division argued that the Medical Commission's ruling was limited to a one year period pursuant to § 27–14–403(i)(G), and that Wilkinson was required to file a new claim each year before he was entitled to extended benefits. The plain language of subsection § 27–14–403(g)(i)(G), however, limits its application to "[a]ny award granted under this subsection." The award granted by the Medical Commission was pursuant to § 27–12–405 (1983). Therefore, § 27–14–403(g)(i)(G), by its own language, does not apply here. Instead, we must look to the 1983 provision to determine whether Wilkinson was required to file a separate claim for 1997 benefits.

The provisions relating to the continuation of extended benefits, once awarded under § 27–12–405(d) state, "The additional compensation shall be payable only so long as the employee's earning power is impaired, and his right to receive compensation terminates upon his death;" that "the award may be … decreased upon proper showing to the court that there has been a substantial change in the employee's earning power, except that no modification of a prior award is effective less than six (6) months after the effective date of the prior award;" and, "[t]he award shall be decreased to an amount necessary to qualify the employee for maximum benefits for any other state or federal government pension plans of any type to which the employee is otherwise eligible." § 27–12–405(d)(v), (vi) & (vii). The statute is silent as to whether the claimant must refile a claim for extended benefits after the initial claim is granted.

In *Wright v. State ex rel. Workers' Safety & Compensation Div.,* 952 P.2d 209, 210–14 (Wyo.1998), we recognized that the rule of liberal construction of the statute in favor of the claimant is applied when the statute at issue is silent as to the issue presented and precedes the legislature's 1994 amendment to the preamble of the worker's compensation statutes. Therefore, our construction in this case "should be accomplished to afford coverage wherever that end may be achieved without unreasonably extending the clear language of the statute." *Id.,* at 211 (and cases cited therein). Applying this rule, there is nothing in the statute which requires Wilkinson to continue to file annual claims for extended benefits. Rather, the language of the 1983 provisions places the burden on the Division to initiate an action *to decrease or terminate* Wilkinson's extended benefits once awarded by the Medical Commission.

The Division did not initiate any action in this case. It failed to present any evidence that Wilkinson's earning power had substantially changed, or that the benefits he received precluded a maximum award of any state or federal benefits. Therefore, the Division failed to establish a prima facie case that the benefits should be decreased. Under these circumstances, Wilkinson carried no burden of proof, and the hearing examiner erred in dismissing the case for his failure to shoulder a non-existent burden.

I would, therefore, reverse. Should the Division believe that Wilkinson's current benefits are in contravention of Wyo. Stat. § 27–12–405(d)(vii), it is free to initiate action on that issue. Given that I would find the hearing examiner's dismissal with prejudice in error, the second judgment in case no. 99–41 must also be reversed.