# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 160

### OCTOBER TERM, A.D. 2013

*December 24, 2013*

IN THE MATTER OF THE
TERMINATION OF THE PARENTAL
RIGHTS TO:
E.R.C.K., Minor Child,

V.L.K,

Appellant
(Natural Mother),

v.

STATE OF WYOMING,
DEPARTMENT OF FAMILY
SERVICES,

Appellee
(Petitioner).

S-13-0091

*Appeal from the District Court of Albany County*
*The Honorable Jeffrey A. Donnell, Judge*

*Representing Appellant:*
Peggy A. Trent, Trent Law Office, LLC, Laramie, Wyoming

*Representing Appellee:*
Peter K. Michael, Interim Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Shawnna M. Herron, Assistant Attorney General. Argument by Ms. Herron.

*Guardian ad Litem:*
Dan S. Wilde, Deputy Public Defender and Program Administrator; Aaron S. Hockman, Guardian *ad Litem* and Permanency Attorney, Wyoming *Guardians ad Litem* Program. Argument by Mr. Hockman.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    The Department of Family Services sought to terminate V.L.K.'s parental rights to her son, E.R.C.K., after its efforts to reunify the family in neglect proceedings were unsuccessful.  V.L.K. failed to answer the Department's petition, and default was entered.  She was subsequently appointed counsel.  The district court declined to set aside the default when asked to do so.  During the course of the default termination hearing, V.L.K. decided to relinquish her parental rights and consent to adoption of E.R.C.K.  The district court recessed the hearing, and V.L.K. provided a signed and acknowledged relinquishment and consent.  The district court entered an order accepting the relinquishment and consent, and there were no further termination proceedings.

[¶2]    V.L.K. claims that the district court erred in not setting aside the default and in accepting the relinquishment and consent.  We find her decision to provide the relinquishment and consent rendered any claimed error in declining to lift the default moot, and that the order accepting the relinquishment and consent is not appealable.  Accordingly, we dismiss the appeal, but remand with instructions for the district court to vacate the portion of the order accepting the relinquishment and consent purporting to divest V.L.K. of her parental rights because this portion of the order is a nullity.  *See, e.g., Weiss v. Weiss*, 2009 WY 124, ¶¶ 1, 14, 217 P.3d 408, 409, 412 (Wyo. 2009).

## ISSUES

[¶3]    1.    Did V.L.K.'s provision of an admittedly voluntary relinquishment and consent to adoption render any error in not lifting an entry of default moot?

        2.    Is the order accepting the relinquishment and consent appealable under Wyoming Rule of Appellate Procedure 1.05?

## FACTS

[¶4]    V.L.K. is the mother of E.R.C.K.  In a petition for termination of parental rights, the Department alleged that on March 5, 2011, when the child was eleven months old, he was taken into protective custody.  Law enforcement authorities following up on an anonymous tip found him to be living in conditions they believed amounted to neglect under Wyoming's Child Protective Services Act, Wyo. Stat. Ann. § 14-3-201 through 216.  The Albany County District Court sitting in juvenile session placed E.R.C.K. in the custody of the Department after a shelter care hearing was held on March 8, 2011.

[¶5]    On October 19, 2012, the Albany County Department of Family Services filed the petition for termination of V.L.K.'s parental rights.  The Department alleged that V.L.K. had neglected E.R.C.K. by keeping him in what can best be summarized as a filthy environment without hot water, electricity, or heat.  It claimed that V.L.K. failed to

1

cooperate with its efforts to rehabilitate and reunify the family because she did not find adequate housing or maintain employment, did not maintain consistent visitation, was unable to bond with E.R.C.K., failed to comply with visits by the Albany County Public Health Department, and otherwise refused services necessary for family reunification. The Department alleged that E.R.C.K. had been in foster care in its custody for fifteen of the past twenty-two months,[1] that V.L.K. was unfit to have custody and control of him, and that V.L.K.'s parental rights should therefore be terminated under Wyoming Statute § 14-2-309(a)(v).[2] It made the same claims for termination of the parental rights of E.R.C.K.'s father, who voluntarily relinquished his parental rights and consented to adoption and therefore did not participate in the proceedings described below.

[¶6]    The Department claims that V.L.K. was served with the petition on October 29, 2012, and V.L.K. does not dispute this assertion, although the return is not included in the record on appeal.[3] The Department moved for entry of default under Wyoming Rule of Civil Procedure 55(a), and default was entered by the clerk on November 21, 2012.[4] A default hearing was set for February 5, 2013, at the Department's request.

[¶7]    On December 14, 2012, V.L.K. filed an affidavit of indigency and request for court-appointed counsel. Counsel was appointed by an order filed on the same date.

---

[1] The allegation was obviously not true when the petition was filed because only approximately nineteen months had elapsed from the time E.R.C.K. was placed in DFS custody and the filing of the petition. However, by the time the case went to hearing, approximately twenty-three months had passed.

[2] Wyoming Statute § 14-2-309(a)(v) provides as follows:

> (a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:
>
> .   .   .
>
> (v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child . . . .

Wyo. Stat. Ann. § 14-2-309(a)(v) (LexisNexis 2013).

[3] The docket sheet reflects only that the return was filed on November 6, 2012, and the return itself was not designated to be included in the record. We assume that the clerk of court would not have entered default without a proper return.

[4] The application for entry of default was also omitted from the record, but the docket sheet indicates that one was filed the same day default was entered.

2

[¶8]  V.L.K.'s attorney filed a motion to set aside the entry of default on the date of the default hearing.  She indicated that her client did not recall being served, but asserted that she had contacted the court to obtain counsel, and was told that she needed to pick the affidavit up in Laramie.  She was living in Cheyenne at the time, and claimed to have no means of transportation to obtain the required form.  She eventually obtained the form from the court by mail and filed it the same way, but only after default had been entered.

[¶9]  The district judge noted that he customarily "allowed every leeway possible" in termination of parental rights cases, but nonetheless declined to set aside the entry of default.  He found no good cause to excuse V.L.K.'s delay in returning the affidavit so that she could be appointed an attorney earlier.  He also pointed out that his chambers had made efforts to prompt V.L.K. to send the affidavit back sooner, to no avail.  He noted the six-week delay between appointment of counsel and filing of the motion to set aside default, which V.L.K.'s attorney explained was the result of her client's need for time to try to comply with the Department's reunification plan and to do some soul-searching as to what position to take in the litigation.  The court did not find that explanation persuasive.

[¶10]  After the ruling, counsel for the Department asked that V.L.K. be prohibited from testifying or presenting evidence, arguing that this Court's decision in *In Re ZMETS*, 2012 WY 68, 276 P.3d 392 (Wyo. 2012), mandated that restriction.  It conceded that V.L.K.'s attorney was entitled to make an opening statement, cross-examine witnesses, object to evidence, and make a closing argument.  V.L.K.'s attorney disagreed with the Department's interpretation of *ZMETS*.  The court indicated that it would proceed as if the Department's interpretation was correct, but that it would review the case and might revise its decision if it read the case differently.[5]

[¶11] Counsel for both parties made opening statements, after which the Department called its first witness, the Department of Family Services caseworker assigned to the neglect case.[6]  He explained his background and job duties, the reasons law enforcement had taken E.R.C.K. into protective custody, and what he had found in his own investigation.  He had just begun to describe the Department's efforts to reunify V.L.K. and her son when her attorney asked permission to speak and advised the Court as follows:

---

[5] Because of our resolution of this appeal, we do not find it necessary to elaborate on the meaning of *In Re ZMETS*.  However, we do note that the procedure used in that case was not objected to or challenged on appeal. *ZMETS*, ¶ 12, 276 P.3d at 395.

[6] The district court was asked to and did take judicial notice of the file in the juvenile neglect proceedings.  That file was not, however, made part of the record in this appeal.

> [V.L.K.'s counsel]: My client has been talking to me, and I think the Court should be aware, she would like to relinquish her rights on the record now.
>
> THE COURT: Is that right, Ms. [V.L.K.]?
>
> [V.L.K.]: Yes, it's right.

The court inquired as to the reasons for V.L.K.'s change of heart, and she indicated that she didn't want her name to be "drug in the mud" anymore, and that she was tired of the "back and forth." She acknowledged that E.R.C.K. needed permanency, and that he already knew his foster parents "as home."

[¶12] The district judge did not mince words, telling V.L.K. that "[i]f you relinquish your parental rights, that means that as far as [E.R.C.K.] is concerned, you might as well be dead." He elaborated that relinquishment would mean that V.L.K. would have no right to visitation, to send gifts or make other contact, and that this situation would be "absolutely permanent. Once done, there's no taking it back."

[¶13] V.L.K. indicated that she understood the finality of the decision she had made, and acknowledged when asked by her attorney that "this is what's best for [E.R.C.K.]." She indicated that the decision was "freely and voluntarily made" when asked by the court. She acknowledged discussing relinquishment at considerable length with her attorney, indicated that all of her questions had been answered, and said she was satisfied with the representation she had received.

[¶14] The court indicated that this was the first time it had encountered such a situation, and that V.L.K.'s decision should be documented by a written relinquishment and consent to adoption. Counsel for the Department indicated that she would email the proper form to V.L.K.'s attorney that very day. The judge indicated that he would reopen the hearing if necessary.

> THE COURT: Okay. Now, [V.L.K.'s counsel] once you get that form, and assuming [V.L.K.] executes that form, would you be sure and confirm that to [the Department's counsel] and [the Guardian *ad litem*]?
>
> And if for some reason that doesn't happen – and I'll expect it to happen today – then let my office know . . . and if we need to, we will reschedule the continuation of this hearing.

4

[¶15]  V.L.K. signed an "Irrevocable Relinquishment and Consent for Adoption" the day of the hearing, and it was filed the next day.  The court entered an "Order Accepting Natural Mother's Irrevocable Relinquishment and Consent for Adoption" on February 6, 2013, although it was approved as to form by all counsel on the day before.  The formatting is similar to that of other documents filed by counsel for DFS, and this Court assumes that the district court did not prepare it.  The order did not reflect oral findings made at the hearing – there the court simply required a written, signed consent and relinquishment and recessed to allow one to be created and signed if V.L.K. was willing to do so.

[¶16]  In the order, the court found that V.L.K. had voluntarily relinquished her parental rights to E.R.C.K.  It also stated that "[V.L.K.'s] parental rights to [E.R.C.K.] are hereby voluntarily relinquished.  [V.L.K.] is therefore divested of all legal rights and privileges to [E.R.C.K.]."

[¶17]  The Court appointed the Department of Family Services guardian of the person and estate of E.R.C.K in the order.  As noted above, the child was already in the Department's custody as a result of orders in the neglect proceeding.  V.L.K. appealed from the order accepting her relinquishment and consent to adoption, as well as the order denying her motion to set aside the default against her.

## DISCUSSION

[¶18] V.L.K. argues that the district court abused its discretion by accepting her relinquishment and in denying her motion to set aside the entry of default.  We will address these issues in reverse order.

### *Entry of Default*

[¶19]  We believe that the real question is whether the denial of the motion to set aside the default is moot in light of the fact that V.L.K. voluntarily relinquished her parental rights in writing.  As we have previously said:

> "[A]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Christian Coalition of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011).  We have set forth basic principles of the mootness doctrine as follows:
>
>> Our general law on justiciability provides that courts should not consider issues which have become moot. *Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Comm'n*, 693 P.2d 227, 233 (Wyo. 1985).  We do not

decide cases when a decision will have no effect or pertains only to matters that might arise in the future. *McLain v. Anderson*, 933 P.2d 468, 472 (Wyo. 1997). A case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy. *Id*. Therefore, if events occur during the pendency of an appeal that cause a case to become moot or make determination of the issues unnecessary, we will dismiss it. *Id.*; *see also Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.*, 773 P.2d 911, 924-25 (Wyo. 1989).

*SNK v. State*, 2003 WY 141, ¶ 18, 78 P.3d 1032, 1037 (Wyo. 2003) (quoting *Wyoming Bd. of Outfitters & Prof'l Guides v. Clark*, 2002 WY 24, ¶ 9, 39 P.3d 1106, 1108 (Wyo. 2002)). We have further explained that a live controversy must persist throughout the duration of the suit in order for the controversy to be justiciable:

> The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Wright & Miller [Federal Practice and Procedure] § 3533.

*SNK*, ¶ 17, 78 P.3d at 1037.

*White v. Shane Edeburn Const. LLC*, 2012 WY 118, ¶ 13, 285 P.3d 949, 953-54 (Wyo. 2012).

[¶20] The district court's decision not to set aside the entry of default is moot in light of V.L.K.'s decision to voluntarily relinquish her parental rights. The court was poised to determine whether the Department could prove grounds for termination. It planned to review the case the Department had relied upon to determine whether V.L.K. should be allowed to present evidence even in default, and the hearing had not proceeded to the point at which her opportunity to do so would have arisen. The court made it clear that it would continue with the hearing even after V.L.K. announced her decision to relinquish

6

unless she signed a written relinquishment and consent. The decision to deny the motion to set aside V.L.K.'s default could therefore have had no effect because she provided a written consent and relinquishment that made further proceedings unnecessary.

*Acceptance of Relinquishment and Consent*

[¶21] V.L.K. argues that the district court erred when it accepted her relinquishment and consent. She contends that the court should have determined at that time whether adoption, E.R.C.K.'s permanency plan, was in his best interest before doing so. She argues that the consent is invalid for that reason.

[¶22] The Department argues that the consent and relinquishment is without effect until an adoption proceeding is initiated. Although the order approving the consent and relinquishment indicates that V.L.K. "is therefore divested of all legal rights and privileges to [E.R.C.K.]," the Department concedes that portion of the order (which its attorney evidently prepared) is a nullity, because the termination hearing was not concluded, and V.L.K.'s rights will not be terminated by use of the consent and relinquishment unless and until there are adoption proceedings. *See* Wyo. Stat. Ann. § 1-22-114(a) (LexisNexis 2013); *In Re TR*, 777 P.2d 1106, 1113-14 (Wyo. 1989). It therefore contends that the controversy is not ripe for adjudication. Because the portion of the order divesting VLK of her parental rights is a nullity, we remand to the district court with instructions to vacate it.

[¶23] V.L.K. cites no authority for the proposition that Wyoming Statute § 14-2-309, which enumerates specific grounds for termination of parental rights, also requires a finding under Wyoming Statute § 1-22-111(a), the statute governing adoption decrees, that an adoption is in the best interest and welfare of the child. We note that Wyoming Statute § 14-3-431 of the Child Protection Act requires the juvenile court to hold a hearing to develop a permanency plan which is in the best interests of a child, and places the burden on the Department of Family Services to demonstrate "a compelling reason" to justify a plan other than reunification with family or legal guardianship. Wyo. Stat. Ann. § 14-3-431(d)(j) (LexisNexis 2013). The statutes therefore contemplate that the juvenile court will change the permanency plan to termination of parental rights and adoption only if to do so is in the best interest of the child and supported by compelling reasons.

[¶24] What V.L.K. suggests would require that the termination and adoption proceedings in abuse and neglect cases be combined, which is contrary to the statutory scheme for cases such as this. The statutes instead provide for development of a permanency plan in juvenile court, followed when required by separate termination proceedings in district court, followed in turn by an adoption case if responsible persons wishing to adopt the child can be found.

[¶25] However, we need not construe the Child Protection Act or the statutes governing termination of parental rights or adoption, because the district court did not terminate V.L.K.'s parental rights to E.R.C.K. – it ended the termination hearing and later found the relinquishment to have been voluntary. Wyoming Statute § 1-22-109 provides that a consent to adoption must be acknowledged by a person who is authorized to take acknowledgements. An unacknowledged consent can be approved by the district court after an informal hearing if the court finds that the consent was knowingly and voluntarily given. § 1-22-109(c)(i)(A) and (ii).

[¶26] The order approving the consent and relinquishment was superfluous and not provided for by statute, because the document was acknowledged by V.L.K.'s own attorney, who was a notary public. *See* Wyo. Stat. Ann. § 34-26-103 (LexisNexis 2013) (persons authorized to perform notarial acts). It was therefore valid without court approval. Even when a court must determine whether an unacknowledged consent has been knowingly and voluntarily given, there is no express statutory requirement that it determine whether adoption is in the best interest of the child. § 1-22-109(c)(i)(A).

[¶27] V.L.K. concedes that the consent was not the product of fraud or duress, the only statutory grounds sufficient to set it aside under Wyoming Statute § 1-22-109(d). Nothing in the record suggests that she has asked the district court to resume the original hearing or to set the consent aside for any other reason. There is no indication that the termination proceedings have been dismissed or resulted in a judgment. There are no adoption proceedings pending – the Department suspended its efforts to find adoptive parents pending the outcome of this appeal.

[¶28] Wyoming Rule of Appellate Procedure 1.05(a) defines an appealable order as "[a]n order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment." W.R.A.P. 1.05(a). We have held that an appealable order under Rule 1.05(a) has "three necessary characteristics. . . . It must affect a substantial right, determine the merits of the controversy, and resolve all outstanding issues." *In re KRA*, 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo. 2004).

[¶29] As already noted, the order accepting the relinquishment and consent did not result in a judgment in the termination proceedings, and it did not affect a substantial right, because the order accomplished nothing the relinquishment and consent V.L.K. signed did not. The portion of the order purporting to divest V.L.K. of her parental rights as to E.R.C.K. is, as discussed above, a nullity. The order therefore did not determine the merits of the controversy or resolve any outstanding issues, and is not a final appealable order under Rule 1.05(a). *See KRA*, ¶ 10, 85 P.3d at 436; *Plymale v. Donnelly*, 2006 WY 3, ¶¶ 10, 11, 125 P.3d 1022, 1025 (Wyo. 2006) (order denying motion to reconsider was a nullity and therefore not a final appealable order).

[¶30] We do not decide whether V.L.K. can revisit her decision to relinquish her parental rights by some means other than this appeal. We conclude only that the order accepting the consent and relinquishment is not appealable.

**CONCLUSION**

[¶31] We find V.L.K.'s challenge to the entry of default moot in light of her decision to sign a relinquishment and consent to adoption. We also find the district court's order not to be appealable. Accordingly, we dismiss the appeal and remand to the district court with instructions to vacate the portion of the order accepting the relinquishment and consent purporting to divest VLK of her parental rights.